ADRIENNE C. PUBLICOVER (State Bar No. 161432)
DONALD P. SULLIVAN (State Bar No. 191080)
**WILSON, ELSER, MOSKOWITZ,**
   **EDELMAN & DICKER LLP**
525 Market Street, 17th Floor
San Francisco, California  94105
Tel: (415) 433-0990 / Fax: (415) 434-1370

Attorneys for Plaintiff
TRANSAMERICA LIFE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>     v.<br><br>GREGORY L. JURIN and JAMES P. McCREA,<br><br>          Defendants. | CASE NO.  14-cv-01881<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Transamerica Life Insurance Company ("Transamerica") complains against Defendants Gregory L. Jurin ("Jurin") and James P. McCrea ("McCrea") as follows:

**JURISDICTION AND VENUE**

1.  The claims for relief contained in this Complaint are brought pursuant to 28 U.S.C. Section 1332; 28 U.S.C. Section 1367; 28 U.S.C. Section 2201 et seq.; and Federal Rule of Civil Procedure 57, to obtain declaratory judgment and other relief.

2.  Transamerica is a corporation, organized and existing under the laws of the State of Iowa, with its principal place of business located in Cedar Rapids, Iowa.  Transamerica administers its long term care insurance business from its offices in Bedford, Texas.  Transamerica is, and was at all times relevant to the matters set forth herein, authorized to conduct business throughout the State of California.

3. Transamerica is informed and believes, and on that basis alleges, that Jurin is an individual residing in Oakland, California.

4. Transamerica is informed and believes, and on that basis alleges, that McCrea is an individual residing in Oakland, California, with Jurin.

5. The Comprehensive Long Term Care Insurance Policy, which is the subject of this action, was applied for by Jurin and issued by Transamerica in the State of California.

6. Original jurisdiction exists in this matter pursuant to 28 U.S.C. Section 1332, federal diversity jurisdiction, because this action involves parties of diverse citizenship. Transamerica is a citizen of Iowa, and Jurin and McCrea are citizens of California.

7. The amount in controversy exceeds the minimum jurisdictional requirement of $75,000.00, exclusive of interest and costs. Transamerica alleges that Jurin ceased needing assistance with completing his Activities of Daily Living as early as January 2012, if not earlier. Through their knowing and intentional misrepresentations, Jurin and McCrea caused Transamerica to continue to pay Long Term Care Insurance Policy benefits to Jurin after this date even though they knew he was no longer entitled to them. Transamerica is seeking restitution of the fraudulently acquired benefits in an amount to be proven at trial, but which it currently estimates to exceed $150,000.00.

8. Transamerica is informed and believes, and on that basis alleges, that Jurin and McCrea live in Alameda County. Hence, this action is brought in the judicial district in which Jurin and McCrea reside.

**FACTUAL ALLEGATIONS**

9. Transamerica realleges and incorporates by reference paragraphs 1 through 8 above, as though fully set forth here.

10. In or about November 1996, Jurin applied in writing to Transamerica for comprehensive long term care insurance.

11. Transamerica issued Policy Number 890714774 (the "Policy") to Jurin in California with an effective date of December 28, 1996.

///

12. Relevant to this lawsuit, the Policy provides Home Care benefits, which include reimbursement for actual expenses incurred in obtaining Personal Care services from a private caregiver. The Policy allows Personal Care services to be provided in connection with Activities of Daily Living (bathing, dressing, eating, toileting, transferring, continence, and ambulating) and instrumental activities of daily living (such as using the telephone, managing medications, and moving about outside).

13. To be eligible for Home Care benefits for Personal Care services, the insured must: (1) be unable to perform two or more Activities of Daily Living, or (2) have a Cognitive Impairment.

14. The Policy defines the phrase "Unable to Perform an Activity of Daily Living" to mean that the insured cannot perform the activity without the actual, supervisory or directional assistance of another person even if the insured uses some equipment.

15. The Policy defines Cognitive Impairment to mean "confusion or disorientation resulting from a deterioration in or loss of [the insured's] intellectual capacity which results in [the insured's] inability to remain in [the insured's] environment without continual human assistance. The presence of a Cognitive Impairment is established by clinical evidence and standardized tests that reliably measure your loss in the areas of: (1) [the insured's] short-term or long-term memory; and (2) [the insured's] orientation as to person (who [the insured] and others are), place ([the insured's location] or time (day, date and year); and (3) [the insured's] deductive or abstract reasoning."

16. If the insured meets the eligibility requirements, the Policy will reimburse the insured his actual charges incurred for Personal Care services received in a calendar month up to the Maximum Monthly Benefit.

17. The Policy states in the Exclusions section that it will not pay for care that is "normally provided at no charge to [the insured] if [the insured] did not have the insurance."

/ / /

/ / /

/ / /

18. In or about January 2005, Jurin submitted a claim for Personal Care benefits on the alleged basis that he satisfied the Policy's eligibility requirements. Part two of the claim form indicated that Jurin had a cognitive impairment and was unable to perform the following Activities of Daily Living: bathing, dressing, toileting, continence, mobility, and transfers. The form also indicated that Jurin needed hands-on assistance to perform numerous instrumental activities of daily living, including medicine administration, personal finances, preparation of meals, using the telephone, housework, laundry, food shopping, errands, and transportation.

19. In late May or early June 2005, Jurin submitted or caused to be submitted to Transamerica several Private Caregiver Reports stating that McCrea provided Jurin with Personal Care services from January 13, 2005 through May 28, 2005. The Private Caregiver Reports were signed by Jurin certifying under penalty of law that McCrea actually provided the services indicated on the Private Caregiver Reports, that McCrea actually worked the number of hours indicated on the Private Caregiver Reports, and that the services McCrea provided were satisfactory. Likewise, McCrea signed the Private Caregiver Reports certifying under penalty of law that he actually provided the services listed on the Private Caregiver report, and that he actually worked the number of hours indicated on the report. Jurin submitted or caused the Private Caregiver Reports to be submitted to Transamerica for the purpose of securing reimbursement from Transamerica for the actual expenses he purportedly incurred in obtaining Personal Care services from McCrea.

20. Jurin has submitted or caused to be submitted similar certified Private Caregiver Reports indicating that McCrea provided him with Personal Care services on all but a few days between May 29, 2005 and the present.

21. The most recent Private Caregiver Report Jurin submitted or caused to be submitted to Transamerica is dated April 12, 2014, and asserts that McCrea worked 54 hours from April 6, 2014 through April 12, 2014, providing Personal Care services to Jurin.

/ / /

/ / /

/ / /

22. As part of its investigation into whether Jurin was able to perform his Activities of Daily Living with or without the assistance of another person, Transamerica retained an investigator to record video surveillance of Jurin between January 31, 2012 and February 5, 2012. The investigator recorded Jurin engaging in activities inconsistent with his asserted limitations.

23. On or about October 9, 2013, Mohinder Nijjar, M.D., a board-certified orthopedic surgeon, conducted an Independent Medical Examination ("IME") of Jurin for purposes of determining whether or not Jurin was able to perform his Activities of Daily Living with or without assistance of another person. Based on Jurin's self-reported symptoms and self-limiting behavior during the examination, Dr. Nijjar opined in an October 9, 2013 report that Jurin was unable to perform all of his Activities of Daily Living without the assistance of another person.

24. As part of its continued investigation into whether Jurin was able to perform his Activities of Daily Living with or without the assistance of another person, Transamerica retained an investigator to record video surveillance of Jurin on the following dates: September 27 through 29, 2013; October 5, 2013; and October 7 through 12, 2013.

25. The investigator retained by Transamerica recorded Jurin on the above-indicated dates engaged in the following activities: walking uphill, walking up and down stairs, walking while eating, walking while talking on a cell phone, walking while holding bags, socializing with other people, bending and reaching into a car, entering and exiting a car without assistance, bending and squatting to put air in car tires, shopping, and yard work.

26. Transamerica provided the investigator's video recordings of Jurin engaging in the above-described physical activities to Dr. Nijjar for his review and asked Dr. Nijjar whether the video evidence altered the conclusions he made in his October 9, 2013 IME report.

27. On December 10, 2013, Dr. Nijjar issued a Supplemental Report stating that the person in the video recordings he watched was Jurin and that Jurin was able to engage in Activities of Daily Living <u>without</u> the assistance of another person. Specifically, Dr. Nijjar reported that Jurin was able to wash himself, get in and out of a tub or shower, dress and feed himself, get to and from the bathroom, take care of his bowel and bladder needs, transfer on and off the toilet, cleanse after elimination, adjust clothing for toileting, get in and out of bed and chairs, and walk. Dr.

Nijjar also reported that Jurin was able to perform the instrumental activities of meal preparation, housekeeping, and laundry.

28. Since 2005, Transamerica has paid in excess of $696,476.58 in Policy benefits to Jurin.

**FIRST CLAIM FOR RELIEF**
**DECLARATORY RELIEF**
(Against Jurin)

29. Transamerica realleges and incorporates by reference Paragraphs 1 through 28 above, as though fully set forth here.

30. Transamerica alleges that benefits are no longer due and payable to Jurin under the terms of the Policy because the undisputable video surveillance evidence proves that Jurin is capable of performing his Activities of Daily Living without the assistance of another person.

31. Transamerica alleges, on information and belief, that Jurin contends that he is unable to perform his Activities of Daily Living without the assistance of another person and is, therefore, entitled to continued payment of benefits from the Policy.

32. Transamerica has no adequate remedy at law.  Transamerica requests that Jurin be found to be not entitled to additional Policy benefits.

33. By reason of the foregoing, there now exists an actual, justiciable controversy between the parties and with respect to their rights and obligations under the Policy.  This Court is vested with the power to declare and adjudicate the rights and legal obligations of the parties to this action with reference to the issues raised by this Complaint.  Transamerica desires a judicial determination of the rights and obligations of each of the parties to this action under the Policy.  A judicial determination is necessary and appropriate at this time in order that each of the parties may ascertain their respective rights and duties as to each other and may conduct themselves accordingly now and in the future.

**SECOND CLAIM FOR RELIEF**
**FRAUD**
(Against Jurin and McCrea)

34. Transamerica realleges and incorporates by reference paragraphs 1 through 33 above, as though fully set forth here.

35. Transamerica alleges that Jurin and McCrea knowingly made, or caused to be made, false statements on the Private Caregiver Reports submitted to Transamerica in 2012 and 2013. These knowingly false statements include, but are not limited to, statements that Jurin was unable to perform his Activities of Daily Living with or without assistance when he could in fact perform such activities; that McCrea worked the number of hours and days indicated on the Private Caregiver Reports when he did not do so; that McCrea provided the Personal Care services indicated on the Private Caregiver Reports when he did not do so; and that Jurin incurred actual expenses in receiving care from McCrea when he did not do so. On information and belief, Transamerica alleges that McCrea is Jurin's domestic partner and that any care McCrea provided to Jurin is care that would normally be provided by one domestic partner to another at no charge.

36. In addition to the misrepresentations made on the Private Caregiver Reports, Transamerica alleges that Jurin and McCrea falsified requests for reimbursement of transportation expenses incurred in relation to the October 9, 2013 IME.

37. Both Jurin and McCrea knew that the above-described statements were false at the time they made them.

38. Transamerica alleges that Jurin and McCrea made, or caused to be made, the above knowingly false misrepresentations to Transamerica with the intent of causing Transamerica to pay Jurin Policy benefits to which he was not entitled.

39. Transamerica alleges that it was unaware of the falsity of the statements made on the Private Caregiver Reports and the requests for reimbursement, and that it reasonably and justifiably relied on them. Specifically, Transamerica alleges it paid Policy benefit payments to Jurin in response to the Private Caregiver Reports he and McCrea submitted, or caused to be submitted, to Transamerica.

40. As a proximate result of Jurin's and McCrea's actions, Transamerica has been damaged as set forth above and is entitled to restitution in an amount to be proven at trial.

41. Based on the above-described fraudulent activity, Transamerica is entitled to rescind or void the Policy pursuant to California Insurance Code section 359. *Cummings v. Farmers Ins. Exchange*, 202 Cal.App.3d 1407, 1419 (1988).

7

Complaint for Declaratory Relief
Case No. 14-cv-01881

1116451v.6

**THIRD CLAIM FOR RELIEF**
**CONSPIRACY TO DEFRAUD**
(Against Jurin and McCrea)

42. Transamerica realleges and incorporates by reference paragraphs 1 through 41 above, as though fully set forth here.

43. Transamerica alleges that Jurin and McCrea, knowingly entered into an agreement to defraud Transamerica and that they followed-through on their scheme.  As set forth above, Jurin and McCrea prearranged and designed a scheme and plan to submit falsified Private Caregiver Reports and other requests for reimbursement to Transamerica with the intent of obtaining payments of Policy benefits from Transamerica to which neither of them was entitled.  As detailed in Paragraphs 36 and 37, Jurin and McCrea knowingly and intentionally followed through on their scheme and submitted, or caused to be submitted, the falsified documents to Transamerica.

44. Transamerica was without knowledge of the falsity of the information contained in the Private Caregiver Reports and other requests for reimbursement.  Transamerica reasonably relied on the documentation Jurin and McCrea submitted, or caused to be submitted, and made payments of Policy benefits to Jurin to which he was not entitled.

45. As a proximate result of Jurin and McCrea's actions, Transamerica has been damaged as set forth above and entitled to restitution in an amount to be proven at trial.

WHEREFORE, Transamerica prays for judgment as follows:

(a) An order declaring and adjudging that Jurin is no longer entitled to the payment of benefits from Transamerica Policy No. 890714774;

(b) An order rescinding or voiding the Transamerica Policy No. 890714774;

(c) An order entering judgment in favor of Transamerica and against Jurin and McCrea;

(d) An order awarding Transamerica its general and specific damages according to proof;

/ / /

/ / /

  (e) An order awarding Transamerica its costs of suit and reasonable attorneys' fees incurred herein; and

  (f) For such other and further relief as the Court may deem just and proper.

Dated: April 23, 2014

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER**

By: /s/ Adrienne C. Publicover
  Adrienne C. Publicover
  Donald P. Sullivan

Attorney for Plaintiff
**TRANSAMERICA LIFE INSURANCE COMPANY**

9

Complaint for Declaratory Relief
Case No. 14-cv-01881

1116451v.6