UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco

TRANSAMERICA LIFE INSURANCE COMPANY,

Plaintiff,

v.

GREGORY L. JURIN, et al.,

Defendants.

_______________________________________/

No. C 14-01881 LB

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

[RE: ECF No. 11]

**INTRODUCTION**

Plaintiff Transamerica Life Insurance Company brings this action against Gregory L. Jurin and James P. McCrea (collectively, "Defendants") alleging that they engaged in fraud and conspiracy to commit fraud by claiming benefits under Jurin's Transamerica policy for long term care insurance. *See* Compl., ECF No. 1. Transamerica seeks declaratory judgment that Jurin is not entitled to the benefits and damages for payments he fraudulently obtained. *Id.* at 8-9. Now pending before the court is Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* Mot. Dismiss, ECF No. 11. The court finds this matter suitable for determination without a hearing under Civil Local Rule 7-1(b) and DENIES Defendants' motion.

**STATEMENT**

**I. The Policy**

In November 1996, Jurin applied for a comprehensive long-term care insurance policy from

Transamerica. Compl., ECF No. 1, ¶¶ 2, 10. Transamerica issued a policy to Jurin (the "Policy"), effective December 28, 1996, that provides "Home Care" benefits. *Id.* ¶ 12. Such benefits include reimbursement for actual expenses of "Personal Care" services from a private caregiver for assistance with "Activities of Daily Living," specifically "bathing, dressing, eating, toileting, transferring, continence, and ambulating." *Id.* ¶ 12. Under the Policy, an insured is eligible for Home Care benefits for Personal Care services if he is unable to perform two or more Activities of Daily Living or has a Cognitive Impairment. *Id.* ¶ 13.

An insured is unable to perform an "Activity of Daily Living" if he "cannot perform the activity without the actual, supervisory or directional assistance of another person" even with the aid of equipment. *Id.* ¶ 14. "Cognitive Impairment" is defined as "confusion or disorientation resulting from a deterioration in or loss of [the insured's] intellectual capacity which results in [the insured's] inability to remain in [the insured's] environment without continual human assistance." *Id.* ¶ 15. The Policy also allows Personal Care services to be provided for assistance with "instrumental activities of daily living," "such as using the telephone, managing medications, and moving about outside." *Id.* ¶ 12.

The Policy provides reimbursement for the insured's actual charges for Personal Care services up to the Maximum Monthly Benefit. *Id.* ¶ 16. The Exclusions section states that the Policy does not cover care that is "normally provided at no charge to [the insured] if [the insured] did not have insurance." *Id.* ¶ 17.

**II. Jurin's Claims for Benefits**

In January 2005, Jurin submitted a claim for Personal Care benefits under the Policy. *Id.* ¶ 18. Jurin's claim form stated that Jurin had a Cognitive Impairment, was unable to perform several Activities of Daily Living, and needed assistance with numerous instrumental activities of daily living. *Id.* Jurin also submitted Private Caregiver Reports stating that defendant McCrea provided Jurin with Personal Care services from January 1, 2005, through May 28, 2005, and similar reports for most days from May 29, 2005 to April 2014. *Id.* ¶¶ 19-20.

//

//

**III. Transamerica's Investigation**

At some point not specified in the Complaint, Transamerica began investigating whether Jurin was able to perform his Activities of Daily Living without assistance. *Id.* ¶ 22. To this end, Transamerica retained an investigator to conduct video surveillance of Jurin between January 5, 2012, and February 5, 2012. *Id.* Transamerica alleges that this "investigator recorded Jurin engaging in activities inconsistent with his asserted limitations." *Id.* An investigator conducted additional surveillance in 2013 from September 27 through 29, on October 5, and from October 7 through 12. *Id.* ¶ 25. Transamerica alleges that on these dates the investigator recorded Jurin performing various activities including walking uphill, walking while holding bags, entering and exiting a car without assistance, shopping, and doing yard work. *Id.* ¶ 25.

On October 9, 2013, Dr. Mohinder Nijjar, a board-certified orthopedic surgeon performed an Independent Medical Exam ("IME") of Jurin and, based on Jurin's self-reporting and self-limiting behavior, opined that Jurin was unable to perform Activities of Daily Living without assistance. *Id.* ¶ 23. Transamerica provided Dr. Nijjar with the investigator's video surveillance recordings and asked him whether the recordings altered the conclusions of his IME report. *Id.* ¶ 26. In December 2013, Dr. Nijjar issued a supplemental report in which he stated that, based on his observations in the videos, Jurin could engage in Activities of Daily Living without assistance, including washing, dressing, and feeding himself and walking. *Id.* ¶ 27. Dr. Nijjar further opined that Jurin was able to perform instrumental activities of daily living such as preparing meals, housekeeping, and laundry. *Id*.

**IV. Transamerica's Claims**

In April 2014, Transamerica filed the Complaint in this case, which raises three claims. First, Transamerica seeks declaratory judgment under 28 U.S.C. § 2201 that Jurin is not entitled to additional benefits under the Policy. *Id.* at ¶ 32. Second, Transamerica alleges both Jurin and McCrea committed fraud by knowingly making false statements on the Private Caregiver Reports submitted to Transamerica in 2012 and 2013 and intending to cause Transamerica to pay Jurin benefits to which he was not entitled under the Policy. *Id.* ¶ 38. Third, Transamerica alleges that Jurin and McCrea engaged in a conspiracy to defraud Transamerica by knowingly entering into an

agreement to defraud Transamerica and carrying out their scheme. *Id.* ¶ 43.

Transamerica alleges that it has paid more than $696,476.58 in benefits under the Policy to Jurin since 2005. *Id.* ¶ 28. Based on its evidence that Jurin has not needed assistance with his Activities of Daily Living since at least January 2012, Transamerica seeks restitution for fraudulently-acquired benefits estimated to be greater than $150,000. *Id.* ¶ 7.

**ANALYSIS**

Defendants move to dismiss Transamerica's claims, arguing that the court lacks subject matter jurisdiction and that Transamerica fails to state a claim for fraud and conspiracy to defraud claims. The court addresses each of Defendants' grounds for dismissal in turn.

## I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER TRANSAMERICA'S COMPLAINT

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits defendants to move for dismissal of a complaint for lack of subject-matter jurisdiction. A plaintiff who seeks to invoke federal jurisdiction by filing a complaint in federal court bears the burden of establishing that jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). The plaintiff must therefore plead sufficient facts in the complaint to establish the court's jurisdiction. Fed. R. Civ. P. 8(a)(1).

A defendant may mount either a facial or a factual challenge to the court's jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n. 3 (9th Cir. 2014) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). When defendant mounts a facial attack, the court must "accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In contrast, when presented with a factual challenge to subject matter jurisdiction, the court may evaluate extrinsic evidence and resolve factual disputes when necessary. *See Roberts v.*

*Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). In a factual challenge, Plaintiff "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Harris v. Rand*, 682 F.3d 846, 850-51 (9th Cir. 2012)). Dismissal of a complaint without leave to amend should be granted only where the jurisdictional defect cannot be cured by amendment. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B. Diversity Jurisdiction**

Under the diversity jurisdiction statute, federal courts have original jurisdiction where the opposing parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The amount in controversy is generally determined from the face of the pleadings. *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1130-31 (9th Cir. 2000). The sum claimed by the plaintiff controls so long as the claim is made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). "To justify dismissal, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 289). Under the "legal certainty" standard, "a federal court has subject matter jurisdiction unless 'upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount.'" *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (quoting *St. Paul Mercury Indemnity Co.*, 303 U.S. at 292).

**C. Transamerica Satisfies the Amount in Controversy Requirement**

Defendants take the position that the amount in controversy here is zero because the damages Transamerica seeks on its fraud claims are not legally recoverable. In particular, Transamerica cannot show justifiable reliance on Jurin's representations because its surveillance investigation demonstrates it knew or at least suspected the alleged misrepresentation as early as January 2012.

Here, the Complaint alleges that the amount in controversy exceeds $150,000. To prevail on their motion, Defendants must establish to a legal certainty that the amount in controversy is less than that amount. They do not meet that burden.

In essence, Defendants are challenging Transamerica's ability to satisfy the reliance element of its fraud claims, not its ability to satisfy the amount in controversy. But the former issue—which amounts to whether Transamerica will ultimately prevail on the merits of its fraud claims—is plainly beyond the scope of a motion to dismiss. *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 807 (2007), on which Defendants rely, is distinguishable. In that case, Buckland alleged that defendant, a cosmetic company, engaged in fraudulent concealment by failing to state that its creams and lotions contained potential unsafe chemicals and negligent misrepresentation by portraying the products as safe and healthful. *Id* . The court held that Buckland failed to plead reliance because she conceded that she bought defendant's products "solely to pursue litigation" when she suspected the packaging and marketing was false and misleading. *Id.* Finding that plaintiff "therefore lacked the requisite confidence in the truth and material completeness of [defendant's] representations," the court affirmed dismissal of her fraud claim. *Id.*

Unlike Buckland, who admitted that she did not believe defendants' representations and purchased the product only to pursue litigation, Transamerica continued to pay benefits on Jurin's policy for more than two years while performing an investigation. Transamerica has sufficiently alleged that it was unaware of the falsity of the statements on Jurin's submissions in support of his requests for reimbursements and relied on them when paying him benefits under the policy. Compl. ECF No. 1 ¶¶ 39, 44. Defendants' attempt to draw a parallel between Transamerica and Buckland fails. Transamerica did not pay benefits only to substantiate its present claim; rather it paid benefits until it reached a determination that it should not. The mere fact that Transamerica investigated the legitimacy of Jurin's limitations in 2012 and 2013 does not defeat its allegation of reliance.

Because Defendants have not demonstrated to a legal certainty that Transamerica will not be able to prove its fraud claim, the court concludes that the Complaint satisfies the amount in controversy requirement. *See Geographic Expeditions, Inc.*, 599 F.3d at 1108 (holding that a potential defense that would restricts recovery to less than $75,000 does not preclude diversity jurisdiction; "just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense.").

//

**D. The Court Will Not Dismiss or Stay This Action**

A month after Transamerica filed the Complaint, Defendants sued Transamerica in California Superior Court for the County of Alameda, alleging that Transamerica breached its contract with Jurin by failing to pay benefits under the Policy and acted in bad faith in the investigation, and bringing a cause of action for battery against Dr. Nijjar. Mot. Dismiss, ECF No. 11 at 5. Defendants urged the court to dismiss or stay this action in favor of Defendants' suit state court action, contending that Transamerica's suit was anticipatory and an attempt to win the race to the courthouse and to deprive Jurin and McCrea of their choice of forum. After opposing Defendants' motion, Transamerica removed Jurin's state court action to the Northern District. *See Jurin v. Transamerica Life Ins. Co.*, No. C 14-2882 JSC, ECF No. 1 (N.D. Cal. June 23, 2014). Jurin and McCrea state their intent to file a motion to remand on the grounds that Defendant Nijjar is a forum defendant, Reply ECF No. 18 at 5. Dr. Nijjar has filed a motion to dismiss. *See id.*, ECF No. 10.

Although there is no indication that Transamerica filed this suit in bad faith, Defendants' arguments are moot now that both suits are pending in this district. The removed action, No. C 14-2882 JSC, will be reassigned to the undersigned as a related case. *See* Local C. R. 3-12.

**II. TRANSAMERICA STATES CLAIMS FOR FRAUD AND CONSPIRACY**

**A. Pleading Standards under the Federal Rules**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint therefore must provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that does not contain enough facts to state a claim to relief that is plausible on its face. *See id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,

a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted).

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud or intentional misrepresentation must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *see Yess v. Ciba-Geigy, Inc.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (allegations of fraud must include "the who, what, when, where, and how" of the misconduct charged). "To satisfy Rule 9(b), 'a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994)).

**B. Fraud**

"The elements of a cause of action for fraud in California are: (a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

Defendants argue that Transamerica's Complaint fails to establish reliance and insufficiently pleads the representations Defendants made that were false and made with the intent to induce reliance. In Defendant's view, Transamerica's allegations that Defendants committed fraud rest on the video evidence showing Jurin engaging in activities inconsistent with his asserted physical limitations. That evidence, they contend, only establishes the existence of a dispute about Jurin's entitlement to benefits, and is not proof of fraud.

The court concludes that Transamerica's allegations state a claim for fraud and meet Rule 9(b)'s heightened pleading requirement. The misrepresentations consist of the false statements on the Private Caregiver Reports Jurin submitted to Transamerica in 2012 and 2013, including:

> statements that Jurin was unable to perform his Activities of Daily Living with or without assistance when he could in fact perform such activities; that McCrea worked the number of hours and days indicated on the Private Caregiver Reports when he did not do so; that McCrea provided the Personal Care services indicated on the Private Caregiver Reports when he did not do so; and that Jurin incurred actual expenses in receiving care from McCrea when he did not do so.

Compl., ECF No. 1, ¶ 35. In addition, Transamerica alleges Defendants "falsified requests for reimbursements of transportation expenses incurred in relation to the October 9, 2013 IME. *Id.* ¶ 36. The Complaint further states that Defendants (a) knew these statements were false at the time they made them, *id.* ¶ 37; (b) made the statements with the intent of causing Transamerica to pay Jurin benefits to which he was not entitled, *id.* ¶ 38; (c) Transmerica was unaware the statements were false and relied on them to pay Jurin benefits, *id.* ¶ 39; and (d) Transamerica was damaged by paying Jurin benefits to which he was not entitled, *id.* ¶ 40.

Defendants take the position that the allegations "at best would support the conclusion there is a dispute over Jurin's entitlement benefits" but do not "however, support the conclusion that Jurin and McCrea committed fraud. Mot. Dismiss, ECF 11 at 17. They further contend that the fraud claim should be dismissed because it is "based on thin evidence." *Id*. These arguments are misplaced. Although Rule 9(b) imposes a heightened requirement, Defendants' position would require plaintiffs to prove their case in their Complaint. As the Ninth Circuit has recognized, Rule 9(b) imposes a heightened standard "so that the fraud-action defendant 'can prepare an adequate answer from the allegations.'" *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1056 (9th Cir. 2008) (quoting *Odom*

*v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007)); *see also Fid. Nat. Title Ins. Co. v. Castle*, C 11-00896 SI, 2011 WL 6141310, at *5 (N.D. Cal. Dec. 8, 2011) (stating that fraud allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud (or mistake) . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). Transamerica's Complaint is not so vague or broad so as to fail to provide notice of the allegations. The Complaint is sufficiently specific to state a claim for fraud.

**C. Conspiracy to Commit Fraud**

Defendants argue that the conspiracy claim fails not only because the underlying fraud claim should be dismissed, but also because "Transamerica does not allege any facts to support the assertion that Jurin and McCrea formed a conspiracy." Mot. Dismiss, ECF No. 11 at 18. The court disagrees.

"Under California law, to state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Cellular Plus, Inc. v. Superior Ct.*, 14 Cal. App. 4th 1224, 1236 (internal quotation, emphasis, and alteration omitted)).

As for the first element—formation and operation of the conspiracy—the Complaint alleges that "Jurin and McCrea prearranged and designed a scheme and plan to submit falsified Private Caregiver Reports and other requests for reimbursement to Transamerica with the intent of obtaining payments of Policy benefits from Transamerica to which neither of them was entitled." Compl., ECF No. 1 ¶ 43. Second, the wrongful acts alleged consist of Defendants' "knowingly and intentionally follow[ing] through on their scheme and submitt[ing], or caus[ing] to be submitted, the falsified documents to Transamerica." *Id.* ¶ 43. Third, Transamerica's payments of benefits in reliance on Defendants' submissions are the damages resulting from Defendant's acts. Id. ¶ 44.

"The existence of a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." *Ally Bank v. Castle*, 11-CV-896 YGR, 2012 WL 3627631, at *10 (N.D. Cal. Aug. 20, 2012) (quoting *In re*

*Sunset Bay Assocs.*, 944 F.2d 1503, 1517 (9th Cir. 1991)); *see also Facebook, Inc. v. MaxBounty, Inc.*, 5:10-CV-04712-JF HRL, 2011 WL 4346514, at *4 (N.D. Cal. Sept. 14, 2011) ("To state a claim for conspiracy, [plaintiff] must plead "an agreement to participate in an unlawful overt act that is performed in furtherance of an agreement. The existence of this agreement may be either express or inferred from a defendant's conduct."). "The conspiracy allegation serves to establish liability of defendants who agreed to defraud the plaintiff, regardless of whether they were direct participants in the wrongful acts." *Ally Bank,* 2012 WL 3627631, at *10 (citing 5 Witkin, *Cal. Pro.* (2008) Pleading, § 921 at p. 335).

Here, Transamerica alleges that Jurin and McCrea, his domestic partner, conspired to defraud Transmerica by submitting falsified Private Caregiver Reports and other requests for reimbursements. Compl., ECF No. 1 ¶ 43. McCrea would be in the position to know whether or not he actually provided the care to Jurin as reported, whether Jurin required that care, and whether, therefore, he and Jurin were entitled to the benefits paid. Given the nature of the alleged misrepresentations and the roles and relationships of the parties, the Complaint adequately alleges the formation of a conspiracy. *See Ally Bank,* 2012 WL 3627631, at *10 (denying motion to dismiss conspiracy to defraud claim; "While no agreement is alleged expressly, the nature of the alleged conduct and alleged roles of the parties gives rise to a reasonable inference that the homeowners were acting based upon the agreement of at least some of the other defendants to carry out the alleged scheme.").

**CONCLUSION**

For the foregoing reasons, the court DENIES Defendants' motion to dismiss. Pursuant to Civil Local Rule 3-12, the Clerk of Court is DIRECTED to reassign Case No. C 14-2882 JSC to the undersigned as a related case.

This disposes of ECF No. 11.

**IT IS SO ORDERED.**

Dated: July 16, 2014

LAUREL BEELER
United States Magistrate Judge