UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>GREGORY L. JURIN, et al.,<br><br>        Defendants.<br>_____/ | No. C 14-01881 LB<br><br>**SECOND ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY THIS ACTION** |

## INTRODUCTION

In this action (the "Federal Action"), Plaintiff Transamerica Life Insurance Company sued Gregory Jurin and James McCrea, alleging that they engaged in fraud and conspiracy to commit fraud by claiming benefits under Mr. Jurin's policy with Transamerica for long term care insurance. Transamerica brings claims against Mr. Jurin and Mr. McCrea for fraud and conspiracy to defraud and asks the court to award them damages based on the benefits Mr. Jurin already allegedly fraudulently obtained. Transamerica also brings a claim against Mr. Jurin for declaratory judgment and asks the court to rule that Mr. Jurin is not entitled to additional benefits in the future. After being sued here, Mr. Jurin filed a second action in state court (the "State Action") against Transamerica and Dr. Mohinder Nijjar for claims arising out of the same insurance policy at issue in this earlier-filed Federal Action. Defendants now move the court to dismiss or, alternatively, stay the Federal Action in favor of the State Action. Upon consideration of the parties' briefing (both

original and supplemental) and the applicable authority, the court denies Defendants' motion.

**STATEMENT**

**I. THE POLICY**

In November 1996, Mr. Jurin applied for a comprehensive long-term care insurance policy from Transamerica. (Complaint, ECF No. 1, ¶¶ 2, 10.[1]) Transamerica issued a policy to Mr. Jurin (the "Policy"), effective December 28, 1996, that provides "Home Care" benefits. (*Id.* ¶ 12.) Such benefits include reimbursement for actual expenses of "Personal Care" services from a private caregiver for assistance with "Activities of Daily Living," specifically "bathing, dressing, eating, toileting, transferring, continence, and ambulating." (*Id.* ¶ 12.) Under the Policy, an insured is eligible for Home Care benefits for Personal Care services if he is unable to perform two or more Activities of Daily Living or has a Cognitive Impairment. (*Id.* ¶ 13.)

An insured is unable to perform an "Activity of Daily Living" if he "cannot perform the activity without the actual, supervisory or directional assistance of another person" even with the aid of equipment. (*Id.* ¶ 14.) "Cognitive Impairment" is defined as "confusion or disorientation resulting from a deterioration in or loss of [the insured's] intellectual capacity which results in [the insured's] inability to remain in [the insured's] environment without continual human assistance." (*Id.* ¶ 15.) The Policy also allows Personal Care services to be provided for assistance with "instrumental activities of daily living," "such as using the telephone, managing medications, and moving about outside." (*Id.* ¶ 12.)

The Policy provides reimbursement for the insured's actual charges for Personal Care services up to the Maximum Monthly Benefit. (*Id.* ¶ 16.) The Exclusions section states that the Policy does not cover care that is "normally provided at no charge to [the insured] if [the insured] did not have insurance." (*Id.* ¶ 17.)

**II. MR. JURIN'S CLAIM FOR BENEFITS**

In January 2005, Mr. Jurin submitted a claim for Personal Care benefits under the Policy. (*Id.* ¶ 18.) His claim form stated that he had a Cognitive Impairment, was unable to perform several

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Activities of Daily Living, and needed assistance with numerous instrumental activities of daily living. (*Id.*) He also submitted Private Caregiver Reports stating that Mr. McCrea provided him with Personal Care services from January 1, 2005, through May 28, 2005, and he provided similar reports for most days from May 29, 2005 to April 2014. (*Id.* ¶¶ 19-20.)

### III. TRANSAMERICA'S INVESTIGATION

At some point not specified in the Complaint, Transamerica began investigating whether Mr. Jurin was able to perform his Activities of Daily Living without assistance. (*Id.* ¶ 22.) To this end, Transamerica retained an investigator to conduct video surveillance of Mr. Jurin between January 5, 2012, and February 5, 2012. (*Id.*) Transamerica alleges that this "investigator recorded Jurin engaging in activities inconsistent with his asserted limitations." (*Id.*) An investigator conducted additional surveillance in 2013 from September 27 through 29, on October 5, and from October 7 through 12. (*Id.* ¶ 25.) Transamerica alleges that on these dates the investigator recorded Mr. Jurin performing various activities including walking uphill, walking while holding bags, entering and exiting a car without assistance, shopping, and doing yard work. (*Id.* ¶ 25.)

On October 9, 2013, Dr. Mohinder Nijjar, a board-certified orthopedic surgeon performed an Independent Medical Exam ("IME") of Mr. Jurin and, based on Jurin's self-reporting and self-limiting behavior, opined in his IME report that Mr. Jurin was unable to perform Activities of Daily Living without assistance. (*Id.* ¶ 23.) Transamerica then provided Dr. Nijjar with the investigator's video surveillance recordings and asked him whether the recordings changed his mind. (*Id.* ¶ 26.) In December 2013, Dr. Nijjar issued a supplemental report in which he stated that, based on his observations in the videos, Mr. Jurin could engage in Activities of Daily Living without assistance, including washing, dressing, feeding himself, and walking. (*Id.* ¶ 27.) Dr. Nijjar further stated that Mr. Jurin was able to perform instrumental Activities of Daily Living like preparing meals, housekeeping, and laundry. (*Id.*)

### IV. THE FEDERAL ACTION FILED BY TRANSAMERICA

In April 2014, Transamerica filed the Complaint in this case, which raises three claims. First, Transamerica seeks a declaratory judgment under 28 U.S.C. § 2201 that Mr. Jurin is not entitled to additional benefits under the Policy. (*Id.* ¶ 32.) Second, Transamerica brings a fraud claim against

both Mr. Jurin and Mr. McCrea, which alleges that they committed fraud by knowingly making false statements on the Private Caregiver Reports submitted to Transamerica in 2012 and 2013 and intending to cause Transamerica to pay Mr. Jurin benefits to which he was not entitled under the Policy. (*Id.* ¶ 38.) Third, Transamerica brings a claim against both Mr. Jurin and Mr. McCrea for conspiracy to defraud, which alleges that they knowingly entered into an agreement to defraud Transamerica and carried out their scheme. (*Id.* ¶ 43.)

Transamerica alleges that it has paid more than $696,476.58 in benefits under the Policy to Mr. Jurin since 2005. (*Id.* ¶ 28.) Based on its evidence that Mr. Jurin has not needed assistance with his Activities of Daily Living since at least January 2012, Transamerica seeks restitution for fraudulently-acquired benefits estimated to be greater than $150,000. (*Id.* ¶ 7.)

## V. THE STATE ACTION FILED BY MR. JURIN

On May 27, 2014, Mr. Jurin brought suit against Transamerica and Dr. Nijjar in Alameda County Superior Court. (*See* Complaint, Case No. C14-2882, ECF No. 1-2.) In that action, he alleges against Transamerica claims for breach of contract (the Policy) and breach of the implied covenant of good faith and fair dealing, and he alleges against Dr. Nijjar a claim for battery. (*Id.*, ¶¶ 26-35, *id*. ¶¶ 26-40.) Transamerica removed the action to this court, but the court remanded it, upon Mr. Jurin's motion, because complete diversity between the parties was lacking.

## VI. PROCEDURAL HISTORY OF THE FEDERAL ACTION

Mr. Jurin and Mr. McCrea previously moved to dismiss the Federal Action on several grounds, including the ground that the court should dismiss or, alternatively, stay the Federal Action in favor of the subsequently-filed State Action. (Motion to Dismiss, ECF No. 11 at 13-16.) After Mr. Jurin and Mr. McCrea filed their motion to dismiss, but before the court ruled on it, Transamerica removed the State Action to this court. (*See* Notice of Removal, Case No. C14-2882, ECF No.1.) In its order denying Defendants' motion to dismiss, the court found the parties' arguments about whether the court should dismiss or stay the action in favor of the State Action to be moot in light of the State Action being removed. (7/16/2014 Order, ECF No. 34.)

Mr. Jurin then filed a motion to remand the State Action back to state court. (Motion to Remand, Case No. C14-2882, ECF No. 17.) After that action was reassigned to the undersigned, the

C 14-01881 LB
ORDER                              4

1 court granted that motion and remanded the action.  (9/3/2014 Order, Case No. C14-2882, ECF No.
2 29.)

3      In light of the court's remanding the State Action back to state court, Defendants filed in this
4 action a motion for leave to file a motion for reconsideration.  (Motion for Reconsideration, ECF
5 No. 42.)  The court agreed with Defendants that consideration of the parties' arguments about
6 whether the court should dismiss or stay the action in favor of the State Action is warranted.
7 (10/06/14 Order, ECF No. 45.)  With the court's permission, the parties filed supplemental briefs on
8 the issue.  (Supplemental Opposition, ECF No. 51; Supplemental Reply, ECF No. 53.[2])

9 **ANALYSIS**

10      Defendants raise several distinct bases, often in the same sentence or string of citations, for why
11 the court should dismiss or stay this Federal Action in favor of the State Action.  Below, the court
12 has untangled these bases, and it discusses each of them in turn.

13 **I.  THE "FIRST TO FILE" RULE DOES NOT APPLY HERE**

14      Judging by the authorities they cite, Defendants primarily argue that the court should dismiss or
15 stay the Federal Action under the so-called "first-to-file" rule.  (*See* Motion, ECF No. 11 at 13.)
16 This rule is a "generally recognized doctrine of federal comity which permits a district court to
17 decline jurisdiction over an action when a complaint involving the same parties and issues has
18 already been filed in another district."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95
19 (9th Cir. 1982); *see Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994) ("The well-
20 established 'first to file' rule allows a district court to transfer, stay or dismiss an action when a
21 similar complaint has been filed in another federal court.") (citing *Alltrade, Inc. v. Uniweld Prod.,*
22 *Inc.*, 946 F.2d 622, 623 (9th Cir. 1991)).  "The rule is primarily meant to alleviate the burden placed
23 on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting
24 judgments."  *Diablo Techs., Inc. v. Netlist, Inc.*, No. 13-CV-3901-YGR, 2013 WL 5609321, at *3

---

[2] Transamerica also asks the court to take judicial notice of the Alameda County Superior Court's decision granting Transamerica's stay of the State Action. (Request for Judicial Notice, ECF No. 56.) The court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Because the Superior Court's decision is a public record, the court may take judicial notice of it. The court grants Transamerica's request.

UNITED STATES DISTRICT COURT
For the Northern District of California

(citing *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979)). "Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter*, 678 F.2d at 95.

"The most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Alltrade*, 946 F.2d at 628 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952)). When deciding whether to exercise this discretion, courts in this Circuit consider three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues involved. *See id.* at 625-26. And while a court should not disregard the rule lightly, a court may refuse to apply it when a plaintiff initiates the suit in bad faith, in anticipation of a second suit, or to engage in forum shopping. *Id.* at 628.

A threshold problem here is that one action is in federal court, and the other action is in state court. On its own terms, then, the first-to-file rule, which is a discretionary rule of federal comity involving courts of concurrent jurisdiction, does not apply. Indeed, all of the first-to-file rule opinions cited by Defendants involved instances where there were two federal actions, not one federal action and one state action. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, No. C-11-1892 EMC, 2012 WL 3277222, at *1 (N.D. Cal. Aug. 9, 2012) (Northern District of California and District of Kansas); *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1144 (E.D. Cal. 2010) (Eastern District of California and Central District of California); *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1189 (C.D. Cal. 2006) (Central District of California and Eastern District of Michigan); *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1094-95 (N.D. Cal. 2006) (Northern District of California and the District of New Jersey); *Alibaba.com, Inc. v. Litecubes, Inc.*, No. C03-5574 MHP, 2004 WL 443712, at *1 (N.D. Cal. Mar. 8, 2004) (Eastern District of Missouri and Northern District of California); *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 664 (N.D. Cal. 2003) (Northern District of California and District of New Jersey); *Ex-Im Plastics, Inc. v. Miwon America, Inc.*, No. CV 96-5710 JGD RCX, 1996 WL 928189, at *1 (C.D. Cal. Oct. 28, 1996) (Central District of California

and District of New Jersey); *British Telecomm'ns v. McDonnell Douglass Corp.*, No. C-93-0677 MHP, 1993 WL 149860, at *2 (N.D. Cal. May 3, 1993) (Eastern District of Missouri and Northern District of California); *Houston Gen. Ins. Co. v. Equitable Life Assurance Society of the United States*, No. CIV-88-732E, 1989 WL 13473, at *1 (W.D.N.Y. Feb. 15, 1989) (Western District of New York and District of New Jersey).[3] The court thus rejects Defendants' argument that the first-to-file rule supports dismissing or staying this action.

## II. ABSTENTION UNDER *WILTON/BRILLHART* IS NOT APPROPRIATE

Even though they did not make it explicit until their reply brief, Defendants also argue that the court should dismiss or stay the action under the *Wilton/Brillhart* abstention doctrine. (*See* Motion, ECF No. 11 sat 13 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494-95 (1942); *Houston*, 1989 WL 13473, at *2 (citing *Brillhart*)); Reply, ECF No. 18 at 7.) The court declines to do so.

The Declaratory Judgment Act authorizes federal courts to hear declaratory judgment actions when there is an actual case or controversy within its jurisdiction. *See* 28 U.S.C. § 2201(a).[4] A plaintiff seeking declaratory relief first must satisfy the standing and jurisdictional requirements common to all federal cases. *See Gov't Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998) (en banc). But even if a plaintiff meets those requirements, the district court may, in its discretion, determine whether maintaining jurisdiction over the declaratory judgment action is appropriate. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-88 (1995); *Brillhart*, 316 U.S. at 495. It is discretionary because the Declaratory Judgment Act "is 'deliberately cast in terms of permissive, rather than mandatory, authority.'" *Dizol*, 133 F.3d at 1223 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (Reed, J., concurring)). And "when deciding whether to exercise its jurisdiction under the Declaratory Judgments Act," a district court

---

[3] Defendants also cited *U.S. ex rel. Swan v. Covenant Care, Inc.*, No. C-97-3814 MHP, 1999 WL 760610 (N.D. Cal. Sept. 21, 1999), for its recitation of factors considered when a court must determine whether to transfer a federal action in one federal district to another federal district under 28 U.S.C. § 1404(a). Neither this statute nor a motion to transfer is at issue here, though, and the court does not find the reasoning to be applicable by extension.

[4] 28 U.S.C. § 2201(b) exempts certain types of actions from the Act, all of which are inapplicable in this case.

C 14-01881 LB
ORDER                                                7

"must balance concerns of judicial administration, comity, and fairness to the litigants." *See Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).

"Although *Brillhart* did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard." *Wilton*, 515 U.S. at 282. For example, "in deciding whether to enter a stay, a district court should examine 'the scope of the pending state court proceeding and the nature of defenses open there.'" *Id.* at 283 (quoting *Brillhart*, 316 U.S. at 495). "This inquiry, in turn, entails consideration of 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.'" *Id.* (quoting *Brillhart*, 316 U.S. at 495). Although other factors also could be relevant, *Brillhart* stated that "at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Id.* (quoting *Brillhart*, 316 U.S. at 495).

The Ninth Circuit has distilled this guidance into three factors. *See Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371-73 (9th Cir. 1991). In this Circuit, district courts should consider whether exercising their jurisdiction would (1) avoid needless determination of state law issues, (2) discourage litigants from filing declaratory actions as a means of forum shopping, or (3) avoid duplicative litigation. *See Chamberlain*, 931 F.2d at 1366. The Ninth Circuit also has suggested that district courts consider the following:

> [1] whether the declaratory action will settle all aspects of the controversy; [2] whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; . . . [4] whether the use of a declaratory action will result in entanglement between the federal and state court systems[;] . . . [5] the convenience of the parties[;] and [6] the availability and relative convenience of other remedies.

*See Dizol*, 133 F.3d at 1225 n.5 (quotation and citation omitted).

But what about actions in which a plaintiff seeks both declaratory relief and monetary damages, as Transamerica does here? "In general," the Ninth Circuit has "applied the principal that 'when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract,

breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) (quoting *Dizol*, 133 F.3d at 1225). The Seventh Circuit has accurately summarized the inquiry that courts in this Circuit must make when a plaintiff seeks both declaratory and non-declaratory relief:

> In contrast [to the Fifth Circuit], the Ninth Circuit first determines "whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) (quoting *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998) (per curiam)). If independent non-declaratory claims are present, then "the district court is without discretion to . . . decline to entertain these causes of action. Indeed, the district court has a 'virtually unflagging' obligation to exercise jurisdiction over these claims." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1226 n.6 (9th Cir. 1998) (en banc). Non-declaratory claims are "independent" of a declaratory claim when they are alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief. *R&D Latex*, 242 F.3d at 1113; *Snodgrass*, 147 F.3d at 1167-68. Regarding the declaratory claim, "[t]he district court should not, as a general rule . . . decline to entertain the claim for declaratory relief. If a federal court is required to determine major issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation." *Dizol*, 133 F.3d at 1225-26. Thus, under the Ninth Circuit's approach, concern for judicial economy significantly limits the discretion afforded by *Wilton/Brillhart* over a declaratory claim when independent non-declaratory claims are present. Where the non-declaratory claims are not independent, the district court has discretion under *Wilton/Brillhart* to abstain from hearing the entire action. *See R&D Latex*, 242 F.3d at 1113.

*R.R. Street & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 715-16 (7th Cir. 2009) (footnote omitted).

Considering this standard, the presence of Transamerica's fraud and conspiracy to defraud claims defeats Defendants' *Wilton/Brillhart* abstention argument. Defendants argue that Transamerica's fraud and conspiracy to defraud claims are not independent of its declaratory relief claim because all three claims arise under the same insurance policy and the same facts and because this action really is about the declaratory relief sought. But this is not the test for independence; the test is whether they "are alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief." *R.R. Street*, 569 F.3d at 715 (citing *R&D Latex*, 242 F.3d at 1113; *Snodgrass*, 147 F.3d at 1167-68). Moreover, the court has diversity jurisdiction over Transamerica's claims, which would still exist without its declaratory judgment

claim. Transamerica's fraud and conspiracy to defraud claims also do not require the court to decide the declaratory relief claim; its fraud and conspiracy to defraud claims seek monetary damages that it has already paid, while its declaratory judgment claim seeks a judgment that it does not have to keep paying Mr. Jurin money. *See R&D Latex*, 242 F.3d at 1113 ("The proper analysis, then, must be whether the claim for monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed."). As the Seventh Circuit has noted, under Ninth Circuit law, "[e]ven if the legal issues involved in deciding the declaratory claim would be dispositive of all of the non-declaratory claims, that would not necessarily mean that the latter are not independent of the former." *R.R. Street*, 569 F.3d at 717 n.9 (citing *R&D Latex*, 242 F.3d at 1112-13). Thus, under the applicable test, the court finds that Transamerica's fraud and conspiracy to defraud claim are independent of its declaratory judgment claim. *See R.R. Street*, 569 F.3d at 717 (adopting the Ninth Circuit's standard for exercising *Wilton*/*Brillhart* abstention and reversing the district court's decision to dismiss the federal action in favor of a state action because "[w]ere the declaratory claim dropped from the case, the district court would still have diversity jurisdiction over the plaintiffs' breach of contract, common law indemnity, and promissory estoppel claims that seek relief in the form of money damages, and the requested declaratory relief is not a prerequisite to resolution of those claims.") (footnotes omitted); *R&D Latex*, 242 F.3d at 1113-14 (reversing the district court's decision not to exercise jurisdiction because the insurance company's claim under *Buss v. Superior Court*, 16 Cal. 4th 35 (Cal. 1997) for reimbursement of defense costs already expended in underlying litigation was independent of the insurance company's claim for a declaratory judgment that it will not owe future defense costs or be required to indemnify its insured for liability).

The court, then, "is without discretion to . . . decline to entertain these causes of action." *Dizol*, 133 F.3d at 1226 n.6. And because the court retains jurisdiction over Transamerica's fraud and conspiracy to defraud claims and will have to adjudicate these state law claims, the court also should follow the general rule and retain jurisdiction over and adjudicate the declaratory judgment claim to avoid piecemeal litigation. *See R&D Latex*, 242 F.3d at 1112; *Dizol*, 133 F.3d at 1225-26. Accordingly, the court declines to exercise its discretion under the *Wilton*/*Brillhart* abstention

doctrine to dismiss or stay this action.

## III.  ABSTENSION UNDER *COLORADO RIVER* IS NOT APPROPRIATE

Defendants also argue, for the first time in their reply, that the court should dismiss or stay this action under the *Colorado River* abstention doctrine.  (*See* Reply, ECF No. 18 at 7.)  Arguments raised for the first time in a reply, of course, are improper.  *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1417 n.12 (9th Cir. 1990) (citing *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir. 1986) (issues raised for first time in reply brief will not be addressed)).  Even so, the court finds the argument unpersuasive.

Under the *Colorado River* doctrine, a federal court may abstain from exercising its jurisdiction in favor of parallel state proceedings where doing so would serve the interests of "[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976); *see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983).  "Exact parallelism" between the state and federal actions is not required; it is enough if the two actions are "substantially similar."  *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).  Nonetheless, the Ninth Circuit has emphasized that "the *Colorado River* doctrine is a narrow exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'"  *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 817).  Accordingly, a stay of proceedings pursuant to the *Colorado River* doctrine is appropriate only where "exceptional circumstances" are present.  *Id.*[5]

*Colorado River* and subsequent Ninth Circuit opinions have identified eight non-exhaustive factors to be considered on a motion to stay or dismiss under *Colorado River*: (1) whether the state

---

[5] "[D]istrict courts must stay, rather than dismiss, an action when they determine that they should defer to the state court proceedings under *Colorado River*."  *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990).  This is to "ensure [ ] that the federal forum will remain open if for some unexpected reason the state forum does turn out to be inadequate," "conserve court resources," and avoid the risk of "mak[ing] premature and speculative legal findings about the preclusive effect of various possible state judgments in choosing between a stay and a dismissal."  *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243, 245 (9th Cir. 1989) (quotation omitted).

C 14-01881 LB
ORDER                                                      11

court first assumed jurisdiction over property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; (7) whether exercising jurisdiction would promote forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *See id.* at 870; *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). These factors should be weighed in a "pragmatic, flexible manner with a view to the realities of the case at hand" and "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses*, 460 U.S. at 16, 21. Factors that are irrelevant to the particular inquiry are disregarded. *See Nakash*, 882 F.2d at 1415 n.6.

Upon consideration of the high legal standard and the relevant factors, the court finds that the circumstances surrounding this case are not so exceptional to warrant abstaining under *Colorado River*. The balance already is "heavily weighted in favor of the exercise of jurisdiction," *Moses*, 460 U.S. at 16, and a majority of the relevant factors support retaining jurisdiction over the action. First, the State Action is proceeding in Alameda County Superior Court, which is roughly 20 minutes away from this court, and Defendants and all counsel are located in this area. It is as convenient a forum as this one is. Second, the court already highlighted its desire to avoid piecemeal litigation in this action when discussing *Wilton*/*Brillhart* abstention. Third, this action was instituted before the State Action was, so this court obtained jurisdiction first. Fourth, although California law will be applied, this court, which sits in California, is quite familiar with that law. And fifth, the State Action will not resolve all of the issues before this court, as there is no fraud or conspiracy to defraud claim at issue there. The court thus declines to abstain from exercising its jurisdiction over this action under *Colorado River*.

### IV. A *LANDIS* STAY IS NOT APPROPRIATE

Defendants also argue, for the first time in their supplemental reply and to which Transamerica could not respond, that the court should stay this action under *Landis v. N. Am. Co.*, 299 U.S. 248,

254 (1936).[6]  (*See* Supplemental Reply, ECF No. 53 at 2.)  The court once again notes that this is improper.  *See Adriana*, 913 F.2d at 1417 n.12.  In such a posture, and out of fairness to Transamerica, the court will not consider Defendants' argument.  *See Miller*, 797 F.2d at 738.  Accordingly, the court rejects Defendants' argument that *Landis* supports staying this action.

## CONCLUSION

For the foregoing reasons, the court denies Defendants' motion to dismiss or stay this action in favor of the State Action.

**IT IS SO ORDERED.**

Dated: January 27, 2015

_____
LAUREL BEELER
United States Magistrate Judge

---

[6] In the sentences mentioning *Landis*, Defendants also cite to *Noel v. Hall* for its statement that "[i]n addition [to several abstention doctrines], a federal court may stay its proceedings based on comity even none of the abstention doctrines requires that it do so."  341 F.3d 1148, 1159 (9th Cir. 2003).  When making this statement, the Ninth Circuit cited to *Deakins v. Monaghan*, 484 U.S. 193, 202-03 (1988).  Not only did Defendants improperly raise this new argument in its supplemental reply, Defendants also completely failed to discuss *Deakins* or *Noel* (which did not even involve *Deakins*) or provide the legal standard for such a stay.  Accordingly, the court rejects Defendants' argument (to the extent they even tried to make it) that the court should stay this action under *Deakins*.